IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STEPHEN B. BRANDENBERG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil No.**  13-cv-924-CJP[1] |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social** ) | |
| **Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Stephen B. Brandenberg is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Supplemental Security Income (SSI) and Disabled Adult Child Insurance Benefits (DAC).

## Procedural History

Plaintiff received SSI benefits based on disability as a child. In 2010 plaintiff reached the age of eighteen and eligibility for these benefits was redetermined. Plaintiff applied for disability insurance benefits as a disabled adult child in February, 2010. (Tr. 22). After holding an evidentiary hearing, ALJ Thomas C. Muldoon denied the application in a written decision dated August 13, 2012. (Tr. 22-32). The Appeals Council denied review, and the decision of the

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c).  See, Doc. 12.

ALJ became the final agency decision. (Tr. 10-12). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ made an error of law by failing to elicit testimony from a vocational expert, by failing to rely upon vocational expert evidence, and the ALJ's decision is therefore unsupported by substantial evidence.

2. The ALJ made an error of law by failing to include in his residual functional capacity finding the functional consequences of attention deficit hyperactivity disorder, and the ALJ's decision is therefore unsupported by substantial evidence.

## Applicable Legal Standards

Individuals who are eligible for SSI benefits as children the month before they reach the age of eighteen must have their disability redetermined under the rules for disability used for adults. **S.S.A § 1614(a)(3)(H).** To qualify for SSI as an adult, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  As is relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, **649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or

combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **20 C.F.R. §§ 404.1520;** *Simila v. Astrue***, 573 F.3d 503, 512-513 (7th Cir. 2009.**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler***, 737 F.2d 714, 715 (7th Cir. 1984).**  *See also Zurawski v. Halter***, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.  Thus, this Court must

4

determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See,** *Books v. Chater*, **91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995)**).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **91 S. Ct. 1420, 1427 (1971).** In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, **103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Muldoon followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the date of his application. He found that plaintiff had severe impairments of ADHD, depression, and a learning disorder and that these impairments do not meet or equal a listed impairment. The ALJ found that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with some nonexertional limitations. Based on the Medical-Vocational

Guidelines, the ALJ found that plaintiff was able to perform jobs which exist in significant numbers in the national and local economy. (Tr. 22-32).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Prior Decision**

As a child, plaintiff was considered disabled on the basis of attention deficit hyperactivity disorder and a motor dysfunction. (Tr. 429). In 2006, an ALJ reviewed plaintiff's record and determined plaintiff had been disabled since August 30, 1999. (Tr. 430). Plaintiff's developmental delays, poor testing results, and his visual-motor coordination problems led the ALJ in that case to determine plaintiff was disabled. (Tr. 427). Plaintiff was entitled to benefits until he reached the age of 18 in 2010. (Tr. 22).

2. **Agency Forms**

Plaintiff was born on April 17, 1992 and was 20 years old when ALJ Muldoon issued his decision. (Tr. 530, 22). Plaintiff attended special education classes in high school and had no previous work experience. He was 5'6" and 260 pounds. He said he was unable to work because of a developmental disability, attention deficit hyperactivity disorder, and autism. (Tr. 534).

In a Function Report submitted in December of 2010 plaintiff stated his concentration caused him to be unable to focus and integrate external and

internal information from his environment. He claimed his problems limited his ability to perform everyday tasks like driving a car, tying his shoes, and buttoning a shirt. (Tr. 559).

Plaintiff lived with his mother and she took care of his dog and cat. His medicine for ADHD interfered with his sleep if he did not take it early enough in the day. He needed his mother to help him regulate his medications and get to school on time. He had trouble shaving and getting ready in the mornings. (Tr. 560). He occasionally made meals in the microwave. (Tr. 561). He was unable to operate yard machinery properly and had trouble remembering how to use a dishwasher and laundry machine. He could not drive a car and relied on either the school bus or other individuals for rides. He was not able to understand how to use a checking or savings account. (Tr. 562). He occasionally visited with a friend that lived down the street and was trying to teach his pet Siberian husky to perform commands. (Tr. 563).

Plaintiff had problems interacting with others and he sometimes said or did inappropriate things. He reported having issues talking, seeing, completing tasks, concentrating, understanding, following instructions, using his hands, getting along with others, and with his memory. He could not follow written or spoken instructions without help (Tr. 564).

### 3. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing on March 15, 2012. (Tr. 861). Plaintiff was nineteen years old at the time of the hearing and lived in Alton, Illinois with his mother. (Tr. 862).

Plaintiff was enrolled in special education classes for math and English in high school before he graduated. (Tr. 863-64). At the time of the hearing, plaintiff was enrolled at Lewis and Clark Community College and taking mostly remedial courses. (Tr. 863).  He was not doing well in his courses at community college because he found it difficult to focus and he frequently procrastinated. (Tr. 864).

Plaintiff did not have a driver's license because he was afraid to drive. (Tr. 865-66). He never attempted to take the test but he did take a driver's education class. His mom took him to his classes in the mornings because he feared public transportation. (Tr. 866).

During plaintiff's junior year of high school he worked in a student employment program. (Tr. 867). He swept stairs but it did not work out well so he quit after about five months. (Tr. 867-68). He did not perform much work outside of sweeping because he had problems performing other work. (Tr. 868). Plaintiff felt his depression and anxiety were keeping him from working at the time of the hearing. His mother took him to see a therapist, Joseph Orbaucher, several times a month to help with his depression. (Tr. 869).  He was currently on medication to help treat depression but he did not think it helped. (Tr. 870).

Plaintiff had a few responsibilities around the house, like taking out the trash, but he had to be reminded to perform them. (Tr. 872). He did not have any hobbies other than using his computer. (Tr. 873).

The ALJ did not ask plaintiff any questions and a vocational expert did not testify.

### 4. Medical Treatment

Since 1999 plaintiff has been repeatedly diagnosed with ADHD by multiple medical professionals. (E.g., Tr. 245-47, 277, 370-3, 673). Plaintiff took Adderall, Strattera, and Focalin at different times to help manage the symptoms of ADHD. (Tr. 382-83, 392, 537, 550-55, 676-79). He felt the medications were not overly helpful and did not take them consistently. (Tr. 670, 708, 739).

Plaintiff had two psychological evaluations performed by Dr. Vincent[3], a clinical psychologist, for disability determination. (Tr. 685-87, 708-11). At the first evaluation in 2010, plaintiff reported a history of ADHD, difficulty organizing tasks, and being easily distracted. He wanted to attend college but had concerns due to his history of special education needs and learning problems. (Tr. 685).

Plaintiff had difficulties following a sequence of instructions without having them repeated and simplified. He was able to remember five numbers forward and three backward, could recall three past presidents, and could spell world forward but not backward. He could count by threes to twenty-one and could name three cities. However, he was unable to recall any of the three items

---

[3] The Court acknowledges that the ALJ incorrectly referred to Dr. Vincent as Dr. Rudolph when discussing plaintiff's second visit to Dr. Vincent.

previously learned after a five minute interval. (Tr. 686). Dr. Vincent felt plaintiff did not meet the criteria for autism and that he could manage his own funds. Dr. Vincent reported his diagnostic impressions of plaintiff were ADHD and mood disorder. (Tr. 687).

Dr. Vincent's second psychological evaluation took place in February 2011. (Tr. 708). His findings were primarily similar with the previous evaluation with a few noted differences. Dr. Vincent noted plaintiff had minimal response to using Strattera for help with his ADHD. (Tr. 708). Dr. Vincent felt plaintiff's mood was moderately depressed, and his thought processes were slow and concrete with limited insight and judgment. (Tr. 709). After overseeing intellectual testing Dr. Vincent found plaintiff to be within the mild mentally retarded range with dependent personality traits. (Tr. 710-11).

In 2011, plaintiff began receiving treatment for his depression at Wellspring Resources and Community Counseling Center. (Tr. 733-83). He was diagnosed with major depressive disorder without psychotic features and started on antidepressants. (Tr. 738). At one point plaintiff was reportedly responding very well to the medications, however at his hearing he stated they were making him tired and were not helping his depression. (Tr. 808, 870).

### 5. Educational Records

Plaintiff was enrolled in special education classes from the first grade through high school. (Tr. 670). Plaintiff had multiple school reports indicating he had learning disorders and needed a great deal of attention to complete tasks as he

was easily distracted. (E.g., Tr. 281, 302, 373, 389, 403). Plaintiff's intelligence and learning capabilities were assessed by multiple tests throughout the course of his academic career. His cognitive functioning tests revealed his intellectual capacity range was anywhere from "average" to "extremely low." (Tr. 613, 650). He graduated from high school in 2011 and took several classes at Lewis and Clark Community College. (Tr. 583, 739). Plaintiff primarily took remedial courses at community college and his grades were mostly C's and D's. (Tr. 583).

### 6. RFC Assessment

Plaintiff had two mental residual functional capacity assessments (RFC) performed. (Tr. 688-91, 712-715). The first RFC was performed by Donald Henson, Ph.D., in August 2010. (Tr. 688-91). Dr. Henson found plaintiff to be moderately limited in his ability to carry out detailed instructions and his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 688). Dr. Henson felt that regardless of plaintiff's limitations he was capable of performing simple routine activities and his interpersonal skills and adaptive behaviors were adequate for vocational involvement. (Tr. 690). In Dr. Henson's psychiatric review technique he found plaintiff mildly restricted in maintaining social functioning, concentration, persistence or pace. (Tr. 702).

Dr. Donna Hudspeth, a psychologist, performed plaintiff's second RFC in March 2011. (Tr. 712-715). She found plaintiff moderately limited in his ability to understand, remember, and carry out detailed instructions, to work in

coordination with or in proximity to others without being distracted by them, to interact appropriately with the general public, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. (Tr. 712-13).

Dr. Hudspeth found plaintiff capable of understanding, remembering, and performing simple, rote, and routine tasks. She felt more complex tasks could be frustrating for plaintiff and that he should not deal with the public but could communicate with a supervisor. She opined that plaintiff was capable of making ordinary work decision and complying with the structure of a work routine. (Tr. 714). In Dr. Hudspeth's psychiatric review technique she found plaintiff moderately limited in his ability to maintain social functioning, concentration, persistence or pace. (Tr. 726).

## Analysis

Plaintiff believes the ALJ erred in his RFC determination by not including the functional consequences of plaintiff's ADHD. Specifically, plaintiff finds fault in the ALJ's failure to include limitations on concentration, persistence and pace in his determination.

RFC is "the most you can still do despite your limitations." **20 C.F.R. §1545(a).** In assessing RFC, the ALJ is required to consider all of the claimant's "medically determinable impairments and all relevant evidence in the record."

*Ibid*. Obviously, the ALJ cannot be faulted for omitting alleged limitations that are not supported by the record.

The ALJ acknowledged that plaintiff had a severe impairment of ADHD and that he had moderate difficulties with concentration, persistence and pace. The only restriction he placed on plaintiff's ability to work was the nonexertional limitation of "simple and routine tasks." Plaintiff criticizes the usage of this language and cites a series of Seventh Circuit cases in support, most notably, *O'Connor-Spinner v. Astrue*, **627 F.3d 614 (7th Cir. 2010).**

In *O'Connor-Spinner*, the ALJ found the claimant had a moderate limitation in concentration, persistence and pace but did not include that limitation in his RFC. *Ibid.,* **617-18.** The commissioner in that case argued the ALJ implicitly incorporated the limitations into his RFC by confining the plaintiff to "routine, repetitive tasks with simple instructions." *Ibid.***, 618.** The Appeals Court found this terminology did not supply the vocational expert with adequate information to determine if the plaintiff could perform jobs in the national economy. In *O'Connor-Spinner* it was made clear that the ALJ did not have to use the terms "concentration, persistence and pace" in making decisions. Alternative phrasing posed to the vocational expert that explicitly made it clear what the ALJ intended was enough to satisfy the specificity requirements. *Ibid.***, 619.**

The Commissioner argues that the case at hand falls under the alternative phrasing exception to the rule. She argues that the ALJ relied upon Dr. Henson's

evaluation in determining the RFC and that "simple and routine tasks" was a specific restriction that satisfied the alternative phrasing exception in *O'Connor-Spinner*. The Commissioner makes several errors in this analysis. First, it is important to understand what the exception actually entails.

The exception exists when the terms "concentration, persistence and pace" were omitted but "it is manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Ibid.* Since the ALJ did not consult a VE in this case it is difficult to say he used alternative phrasing that included plaintiff's limitations somehow. He used the terms "simple and routine" and included no further analysis into plaintiff's acknowledged problems in concentration, persistence and pace. His reliance on Dr. Henson's opinion fails to show how the ALJ incorporated plaintiff's limitations into the potential work he could or could not perform on a regular basis.

In *O'Connor-Spinner*, the appeals court clearly stated "[i]n most cases. . . employing terms like 'simple, repetitive tasks' on their own will not exclude . . . positions that present significant problems in concentration, persistence and pace." *Ibid.***, 620.** Additionally, the court went on to state "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus. . . on these limitations and assure reviewing courts [that there is] substantial evidence of the jobs a claimant can do." *Ibid.***, 620-21.**

This Court finds the case at hand to fit under the rule in *O'Connor-Spinner* and fails to see the distinction the Commissioner intends to draw. The Commissioner cites several cases to support her contention that the alternative-phrasing exception applies here. However it is important to note the cases she referenced are all distinguishable and non-precedential district court cases. In each cited case the ALJ not only consulted a VE but also included the additional limitations spelled out in O'Connor-Spinner. For example, in *Renly v. Colvin*, **No. 13-cv-242, 2014 U.S. Dist. LEXIS 28690, *1, *3 (W.D. Wis., 2014)** the ALJ presented a hypothetical to a VE where he elaborated his meaning of routine and repetitive stating they were "tasks that may have several steps, but the steps are not hard to remember or complicated, and they don't include a lot of involved written or oral instructions." The VE took those additional factors into consideration when forming the RFC and therefore applied the alternative-phrasing exception. *Ibid.*

This is not what occurred in the case at hand. The ALJ agreed that concentration, persistence and pace impairments existed for plaintiff at least to a moderate degree but failed to include them in his limitations or analysis of work capabilities. Plaintiff cited several portions of the record that established impairments with concentration and memory. Plaintiff argues that these difficulties are disabling and cites portions of the record indicative of those impairments.

15

The Commissioner correctly noted that several of the instances plaintiff cites occurred when he was a child. However, plaintiff also cites several portions of the record that occurred after he reached eighteen and that indicate his problems with concentration and memory. For example, plaintiff struggled concentrating in interviews with Dr. Vincent. (Tr. 685-687). He could not remember to bring home his text books so he had to have an extra set for his home. (Tr. 642). He cannot drive because he cannot concentrate and focus enough to be able to do so safely. (Tr. 556, 559). While these problems may not translate into plaintiff being entirely disabled, these issues should have been factored into the ALJ's determination of plaintiff's work capabilities.  All of plaintiff's limitations need to be analyzed to assure reviewing courts that there is substantial evidence of the jobs plaintiff can do. *O'Connor-Spinner*, **627 F.3d at 621.**

This Court next looks at plaintiff's contention that the ALJ erred in not consulting a vocational expert. The ALJ looked to the Medical-Vocational Guidelines (the "grids") in his determination that plaintiff was not disabled. He stated that if the claimant has solely nonexertional limitations that relying on the grids was appropriate. This is error. The Seventh Circuit has held that that "where a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, **245 F.3d 881, 889 (7th Cir. 2001).**  Additionally, the regulations specifically provide that usage of the

grids is appropriate when the claimant has no nonexertional limitations. 20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(e). See also, *Haynes v. Barnhart*, **416 F.3d 621, 628-629 (7th Cir. 2005).**

The ALJ found plaintiff had severe ADHD, depression, and nonexertional limitations of simple and routine tasks. There is substantial evidence within the record that establishes plaintiff had difficulty with memory and concentration. (E.g., Tr. 281, 302, 373, 389, 403). As discussed above, the ALJ acknowledged plaintiff's moderate difficulties with concentration, persistence and pace. Similarly to *Zurawski*, because this Court has ordered a redetermination of plaintiff's RFC, "it would be premature to direct the ALJ to solicit vocational testimony from an expert. That said, however, the ALJ must act consistent with the law in this circuit. . . if [he] relies on the grids on remand." *Zurawski*, **245 F.3d at 890.**

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Stephen B. Brandenberg's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:  October 20, 2014.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**